**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WESLEY M. RIEDEL,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | NO. ED CV 05-796-E<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

Plaintiff filed a Complaint on August 23, 2005, seeking review of the Commissioner's denial of benefits. The parties filed a "Consent to Proceed Before a United States Magistrate Judge" on October 14, 2005.

Plaintiff filed a "Motion for Summary Judgment or Remand" ("Pl.'s Mot.") on January 26, 2006. Defendant filed a "Memorandum of Points and Authorities in Support of Defendant's Cross-Motion for Summary Judgment, etc." ("Def.'s Mot.") on February 27, 2006. The

Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed August 25, 2005.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On October 24, 2001, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (Administrative Record ("A.R.") 63-65). Plaintiff asserted disability since April 30, 2001, based on "degenerative disk disorder, cronic [sic] nerve pain, [and] herniated cervical discs" (A.R. 76). The Administration denied Plaintiff's application initially and upon reconsideration (A.R. 48, 53). Plaintiff then requested a hearing, which an Administrative Law Judge ("ALJ") held on February 12, 2003 (A.R. 26, 60). The ALJ examined the medical record and heard testimony from Plaintiff (A.R. 15-46). Plaintiff was not represented by counsel (Id.).

The ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act (A.R. 19-20). See 42 U.S.C. § 423(d)(1)(A) (defining "disability"). Although the ALJ found Plaintiff has a "severe" impairment in the musculoskeletal system, the ALJ denied benefits (A.R. 19-20). The ALJ determined that Plaintiff's impairments, singly or in combination, do not: (1) meet or equal the listings in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "listings"); or (2) prevent Plaintiff from performing substantial gainful activity (A.R. 19-20). See 20 C.F.R. § 404.1520(f)(1). The ALJ explained: "[C]laimant has the residual functional capacity for a limited range of light work and full range of sedentary work." (A.R.

18, 19 (partly adopting state agency physician physical residual functional capacity evaluations, limited by Plaintiff's subjective complaints); Cf. A.R. 185-92, 201-06). The ALJ then applied the Medical-Vocational Guidelines in 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grids") to find Plaintiff not disabled (A.R. 19-20). The Appeals Council denied review. (A.R. 4-6).

Plaintiff filed a complaint with this Court on February 17, 2004, in Case No. ED CV 04-190-E. On the parties' cross-motions for summary judgment, the Court remanded the case to the Commissioner to determine whether Plaintiff's apparent obesity causes any physical or mental limitations. See September 3, 2004 Memorandum Opinion and Order of Remand, A.R. 222-27 (citing Social Security Ruling 02-01p, which provides that the Administration must consider the effect of obesity on an individual's ability to work and noting Plaintiff's Body Mass Index ("BMI") as within the National Institute of Health's obesity range). The Appeals Council vacated the Commissioner's final decision and remanded the case to the Commissioner for further administrative proceedings (A.R. 228).

The same ALJ held a second hearing on April 20, 2005, wherein the ALJ heard testimony from Plaintiff and a vocational expert (A.R. 244-68). Plaintiff was not represented by counsel and no new medical records or evaluations were offered (Id.). Plaintiff testified that his condition was the same as it was at the prior hearing (A.R. 252).[1]

[1] Plaintiff alleged constant pain in the neck, head, eye, right side of his face, and lower back (A.R. 252-53). Although physical therapy helped Plaintiff with his back and neck pain, the last time Plaintiff received physical therapy was in 2002 (A.R.

The vocational expert testified that a hypothetical person with the residual functional capacity assessed for Plaintiff by the consultative neurological examiner, Dr. Robert Moore, could perform a limited range of light work, including Plaintiff’s prior work as a counter clerk (A.R. 262-64). The vocational expert also testified similarly that a hypothetical person with the residual functional capacity assessed for Plaintiff by state agency physicians on November 29, 2001, could perform Plaintiff’s prior work (A.R. 264-65).

The ALJ again determined Plaintiff was not disabled within the meaning of the Social Security Act, incorporating the ALJ’s former decision by reference (A.R. 218-19). The ALJ found that while Plaintiff’s obesity does reduce Plaintiff’s residual functional capacity to a limited range of light work and a full range of sedentary work activities, Plaintiff still is able to perform his past relevant work as a counter clerk (A.R. 217-19 (adopting the vocational expert’s testimony based on Dr. Moore’s assessment)). The ALJ also found that Plaintiff could perform thousands of unskilled jobs such as a mail clerk, assembler and packer (Id.).

Plaintiff now claims disability based on, inter alia, alleged “musculoskeletal impairments, obesity, and chronic migraine type headaches” (Pl.’s Mot., p. 1).

///

///

---

254).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the administrative decision to determine if: (1) the findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Swanson v. Secretary, 763 F.2d 1061, 1064 (9th Cir. 1985). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court cannot disturb the Administration's findings if those findings are supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).[2]

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[3] legal error.

///

///

---

[2] Because the Appeals Council did not assume jurisdiction of the case following the ALJ's May 18, 2005 decision, that decision stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.984(a), 416.1484(a).

[3] The harmless error rule applies to review of Administrative decisions regarding disability. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991).

**I. Substantial Evidence Supports the Administrative Decision.**

Plaintiff's medical records do not confirm allegations of disabling musculoskeletal impairments, obesity, or migraine headaches. Plaintiff underwent a lumbar laminectomy in February, 2001, to treat a L4-L5 recurrent herniated disk and associated pain (A.R. 107-14).[4] Five years earlier, Plaintiff was noted to have had back surgery with excellent post-operative results (A.R. 114). One month after Plaintiff's last surgery, Plaintiff's surgeon, Dr. Austin Colohan, noted Plaintiff's pain was "completely resolved" and that Plaintiff was "returning to full term activity" (A.R. 109).

At a second follow-up visit two months later, on May 31, 2001, Dr. Colohan noted Plaintiff then was suffering from a flare-up of chronic neck pain, right shoulder pain radiating to the right side of Plaintiff's face and behind Plaintiff's eye associated with "minimal C5-C7 and C6-C7 broad-based disk protrusions without significant spinal canal compromise or neuroforaminal narrowing" (A.R. 107; see also A.R. 183). Dr. Colohan counseled against surgery to treat the

---

[4] The intake report made when Plaintiff was admitted for surgery described Plaintiff as "a well-nourished, well-developed Caucasian male with no acute distress, except increased pains with certain types of lumbar activities" (A.R. 149-51). It noted that Plaintiff "has paresthesias to his left lower extremity, including left anterior thigh and left lower extremity weakness," as well as a "history of headaches which were diagnosed as cluster migraines and stress and treated with lithium with good affect [sic]" (A.R. 150; see also A.R. 164, 167). The report also noted Plaintiff has "full range of motion of his neck, arms, and wrists"; a "[s]pine with normal curvatures[,] [f]lexion is 20 degrees, extension 10 degrees, and lateral range of motion is normal, but with increased lumbar pains. . . . Straight leg raise on the right is within normal limits, left 30 degrees with increased lumbar pains" (A.R. 150).

disk protrusions, and instead prescribed a series of epidural steroid injections to treat Plaintiff's chronic pain syndrome (A.R. 107).[5]

Plaintiff received two series of epidural injections (A.R. 120, 128, 132, 255). At the time of the injections, Plaintiff rated his neck pain at between 3 and 4 on a scale of 1 to 10 (A.R. 122, 128, 130, 134). At the first hearing on February 12, 2003, Plaintiff reported that the epidural injections had stopped the extreme pain he experienced in his neck and shoulder, but claimed he still experienced pain in the neck and right shoulder 90 percent of the time (A.R. 32-34). Plaintiff reportedly was taking Darvocet for his headaches and residual pain (A.R. 32). At the last hearing on April 20, 2005, Plaintiff reported he had just started taking 200 milligrams of Celebrex twice a day and 10 milligrams of Flexeril three times a day to treat his pain (A.R. 256). Plaintiff reported no emergency room visits in the prior year for pain (Id.).

Dr. Moore, the consultative neurological examiner, examined Plaintiff on or about March 27, 2002. Dr. Moore noted Plaintiff was 69 inches tall and weighed 266 pounds, and described Plaintiff as a "well-nourished male in no acute distress" (A.R. 194-95). Dr. Moore diagnosed Plaintiff with chronic left S1 sensory radiculopathy, right meralgia paresthetica, and biomechanical neck pain with right shoulder pain (A.R. 197). An examination of Plaintiff's spine

[5] Plaintiff had been seen by urgent care at least twice earlier that month for complaints of shoulder pain and was prescribed Darvocet and Flexeril for his pain (A.R. 107, 180-81). The day before Plaintiff's follow-up visit with Dr. Colohan, Plaintiff was seen by urgent care for injuries Plaintiff sustained from crashing his motor bike a week earlier (A.R. 179).

revealed a 25-degree loss of flexion and a 5-degree loss of rotation in either direction (A.R. 195). Dr. Moore reported "tenderness over the mid and lower paralumbar muscles with some mild left paralumbar muscle spasm" (Id.). Straight leg raising was positive on the left at 60 degrees and negative on the right (A.R. 195-96). Plaintiff exhibited a "normal and spontaneous gait" and was able to walk on his heels and toes (A.R. 196). Plaintiff's strength in his upper and lower extremities reportedly was normal (A.R. 197). Examination of Plaintiff's right shoulder revealed no gross joint deformities, a full range of motion in rotation and abduction. Plaintiff complained of pain at greater than 100 degrees of abduction at zero degrees rotation, and at greater than 90 degrees of abduction at 90 degrees rotation (Id.).

Dr. Moore concluded:

> The patient is cognitively intact. The patient can follow simple and complex commands and perform simple and complex tasks. ¶ . . . He has right shoulder pain. He can frequently push and pull. He is able to operate hand controls. He would have slight difficulty using certain types of tools. He can perform unrestricted simple gripping and distal fine coordinated movements of the hand and fingers. He has unrestricted use of the left upper extremity. ¶ The patient can sit in an unrestricted manner. Because of his low back problems, he would have difficulty standing and walking more than four hours out of an eight-hour day in 30 to 40 minute intervals. He can occasionally

bend and stoop. He is able to operate foot controls. ¶ The patient can intermittently lift and carry 30 pounds and frequently lift and carry 15 pounds.

(A.R. 197-98).

State agency physicians assessed Plaintiff's physical residual functional capacity in 2001 and again in 2002 (A.R. 185-92, 201-08). The more restrictive 2002 assessment found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk up to four hours in an 8-hour workday, sit about six hours in an 8-hour workday, and could not constantly push or pull with his right side (A.R. 201; Cf. A.R. 195-91 (2001 evaluation finding Plaintiff could stand or walk about six hours in an 8-hour day)). The physician specifically noted that the findings were based on Plaintiff's height of 69 inches, weight of 266 pounds, BMI of 39.4, blood pressure of 132/86, surgical history, decreased range of motion in flexion and rotation, and right shoulder pain (A.R. 202). The physician limited Plaintiff's capacity to: (1) never climbing ladders, ropes, scaffolds; (2) no overhead reaching or handling with his right upper extremity; (3) no constant gripping, grasping, pushing or pulling with the right upper extremity, but noted that frequently reaching, handling, gripping, grasping, pushing or pulling is "ok" (A.R. 203-04). Plaintiff is to avoid all exposure to vibrations (A.R. 205).

Given Dr. Moore's evaluation and Plaintiff's subjective complaints, the state agency physician further limited Plaintiff's

residual functional capacity:

> [Dr. Moore] notes claimant has more pain with prolonged standing or walking and should be limited to no more than 4 hours per workday. Due to continuing problems with his spine and shoulder he should avoid working with vibrating tools and only occasionally do work requiring postural changes. ¶ Claimant is partially credible with his statement of not being able to work. He would not be able to do his past work. He is able to do other types of work, requiring less stand and walk [sic].

(A.R. 207). The state agency physicians concluded that the evidence supports a finding of a light residual functional capacity. See A.R. 209, referencing A.R. 190.[6]

---

[6] While the record contains slightly differing medical opinions regarding Plaintiff's residual functional capacity and particularly Plaintiff's ability to perform past relevant work, none of the physicians who examined Plaintiff or reviewed Plaintiff's medical records opined that Plaintiff is disabled. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Administration's decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord Curry v. Sullivan, supra, 925 F.2d at 1130 n.1.

To the extent the record contains any conflicting evidence on the specific limitations to Plaintiff's light residual functional capacity or on the issue of Plaintiff's ability to perform Plaintiff's past relevant work, it was the prerogative of the ALJ to resolve the conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). Where, as here, the evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision. Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986) (an

The vocational expert testified that a person having the limitations identified by Dr. Moore or in the first Physical Residual Functional Capacity Assessment could perform Plaintiff's past relevant work as a counter clerk. See A.R. 262-65, referencing A.R. 95 (Dictionary of Occupational Titles listing for Plaintiff's past relevant work which notes a strength level of "light",[7] no vibrations, occasional stooping and crouching, and only frequent reaching, handling or fingering). The vocational expert further opined that a person with those limitations could perform a range of light unskilled employment existing in significant numbers in the local and national economy (A.R. 264).[8] This testimony furnishes substantial evidence that Plaintiff could perform his past relevant work, or, alternatively, other work that exists in significant numbers. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); see also Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986); see generally 42 U.S.C. § 423(d)(2)(A).

---

ALJ need not explicitly detail reasons for rejecting the contradicted opinions of non-treating physicians).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); see also U.S. Department of Labor, Dictionary of Occupational Titles, Appendix C Components of the Definition Trailer (4th ed., Rev. 1991), http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (similarly defining "light" work).

[8] The ALJ did not ask the vocational expert to opine regarding the abilities of a hypothetical person with the capacity noted in the 2002 assessment (A.R. 261-65).

## II. Plaintiff's Various Arguments Are Unavailing.[9]

Plaintiff challenges the ALJ's decision, asserting, inter alia: (1) the ALJ allegedly failed to specify in his most recent decision precisely what physical functional limitations he has found to exist in this case; (2) the ALJ allegedly failed to state to what degree Plaintiff's obesity reduces Plaintiff's residual functional capacity; (3) the ALJ allegedly failed to consider the effects of Plaintiff's recurring headaches on Plaintiff's residual functional capacity; and (4) the ALJ allegedly failed to cite clear and convincing reasons for rejecting Plaintiff's testimony (Pl.'s Mot., pp. 4-6). None of these challenges has merit.

### A. The ALJ Adequately Discussed Plaintiff's Physical Residual Functional Capacity.

The ALJ's May 18, 2005 decision incorporates by reference the ALJ's March 11, 2003 decision that describes in detail the medical evidence set forth above. See A.R. 217 (incorporating A.R. 15-20). The ALJ summarized Dr. Moore's assessment and the state agency physicians' Physical Residual Functional Capacity Assessments, as well as Plaintiff's subjective complaints of pain (A.R. 17-18). While the ALJ's final decision arguably is ambiguous regarding which of the functional assessments he adopted, the Court need not resolve this ambiguity as any error in failing more specifically to identify

---

[9] The Court has considered all of Plaintiff's arguments and has found those arguments unpersuasive. The Court discusses Plaintiff's principal arguments herein.

Plaintiff's residual functional capacity is harmless.

The ALJ presented the Dr. Moore's restrictive assessment to the vocational expert who found that a person with such an assessment could perform Plaintiff's relevant work as a counter clerk (A.R. 262-64; see also A.R. 219 (ALJ adopting in his findings the vocational expert's testimony based on Dr. Moore's assessment)). Even if the ALJ adopted the 2002 Physical Residual Functional Capacity Assessment discussed above, the Dictionary of Occupational Titles entry for Plaintiff's past relevant work as a counter clerk is consistent with the 2002 assessment. Compare A.R. 95 with A.R. 201-09; see also Johnson v. Shalala, supra, 60 F.3d 1428, 1435 (9th Cir. 1995) (the Dictionary of Occupational Titles raises job classification presumptions that are controlling unless rebutted); Social Security Rulings 82-61 and 82-62 (providing that the ALJ may rely upon the Dictionary of Occupational Titles to find that a claimant can perform his or her past relevant work).

**B. The ALJ Properly Weighed the Effects of Plaintiff's Obesity and Headaches.**

The record indicates that the ALJ properly considered Plaintiff's obesity in assessing Plaintiff's ability to work. See Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005) (ALJ adequately considered claimant's obesity, where the ALJ's decision discussed medical evidence that the claimant was somewhat obese and that her obesity likely contributed to her back discomfort). Here, the ALJ incorporated by reference his detailed discussion of the medical

evidence (A.R. 17-19, 217), and added:

> It should be noted that I have considered Ruling 02-01p as it relates to the claimant's condition of obesity. . . . Based on the objective evidence the physical functional limitations adopted herein consider the claimant's weight and it's [sic] affect [sic] on his ability to ambulate as well as his other body systems.

(A.R. 218). The ALJ explained:

> [Plaintiff] appears large but not grossly obese and his observed mobility was not impaired by his habitus. [] Dr. Moore noted that [Plaintiff] walked with a normal, spontaneous gait and was well able to heel/toe walk. The State Agency review physicians also knew the claimant's stature and still assessed him with essentially a full range of light work activities. On remand, [Plaintiff] had no complaints in his testimony specifically about limitations caused by his weight.

See A.R. 218; see also A.R. 202, 209 (2002 Physical Residual Functional Capacity Assessment specifically acknowledging Plaintiff's BMI as included in forming the assessment). No further consideration was necessary.

Likewise, the ALJ properly considered the effects of Plaintiff's headaches. In his 2003 decision, the ALJ noted Plaintiff's 20-year

history of headaches and noted that despite Plaintiff's complaints, his treatment is minimal and involves no antimigrainous medications (A.R. 19-20).

## C. The Court Will Not Disturb the ALJ's Credibility Determination.

The ALJ found not credible Plaintiff's testimony concerning the severity of Plaintiff's alleged pain and related alleged functional limitations (A.R. 18-19, 218). An ALJ's assessment of claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, supra, 779 F.2d at 531. The discounting of a claimant's testimony regarding subjective symptoms must be supported by specific, cogent findings.[10] See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988) (citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In the present case, the ALJ made the requisite findings, supported by substantial evidence in the record.

Plaintiff claimed he could stand in one position for five minutes, walk for one block, sit for about 45 minutes, drive for ten miles, and could not lift anything like gallons of milk or water

---

[10] In the absence of evidence of "malingering," some Ninth Circuit cases have applied the arguably more rigorous "clear and convincing" standard. See Ballard v. Apfel, 2000 WL 1899797 *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). In the present case, the Administration's findings pass muster under either the "specific, cogent" standard or the "clear and convincing" standard, so the distinction between the two standards (if any) is academic.

(A.R. 257-58). Plaintiff read from a two-week pain journal he kept for his doctor, noting 78 episodes of pain in the two-week period, or an average of six episodes per day (A.R. 259-60). Plaintiff estimated he could function only one day per week (Id.). The ALJ rejected these reports as "grossly exaggerated" and unsupported by the medical record (A.R. 218).

In rejecting Plaintiff's testimony, the ALJ specifically noted the conservative nature of Plaintiff's treatment and his daily activities as suggesting less restriction than Plaintiff claims (A.R. 18-19, 218). At the time of the first decision, the ALJ noted that Plaintiff had not seen a doctor for treatment in the eight months prior, was only taking Darvocet daily for his pain, takes no antimigrainous medications, drives up to 45 miles at a time, and has a California driver's license without restriction (A.R. 18-19). The ALJ properly noted the minimal, conservative nature of Plaintiff's pain-related treatment and daily activities as evidence to discredit Plaintiff's allegations of disabling pain. See Bunnel v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 603-604 (9th Cir. 1989); see also Williams v. Bowen, 790 F.2d 713, 715 (8th Cir. 1986) (upholding ALJ's rejection of claimant's credibility where claimant took only Flexeril, Equanil and aspirin daily for his back pain); Erickson v. Apfel, 1998 WL 196471 *3-4 (N.D. Cal. Apr. 3, 1998) (same where claimant "took only one Naprosyn and one Percodan daily"); Chavez v. Department of Health and Human Serv., 103 F.3d 849, 853 (9th Cir. 1996) (failure to seek "further treatment" for back injury among specific findings justifying rejection of claimant's excess pain testimony).

Moreover, the medical record supports the ALJ's determination. As summarized above, Plaintiff's post-operative treatment since the first hearing is minimal. Plaintiff's two Physical Residual Functional Capacity Assessments note that the intensity, persistence and functional limitations alleged are not credible when considered against the medical record (A.R. 190, 207). The 2001 Assessment notes that the MRI of Plaintiff's cervical spine shows "[n]o neurological deficits or mechanical signs of nerve root impingement" that would suggest the degree of limitations Plaintiff claims (A.R. 190, referencing A.R. 107). See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . .").

**CONCLUSION**

For all of the reasons discussed herein, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 21, 2006.

_______________/S/___________________
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE